**Alfred JOHNSON, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A02–0405–CR–427.**

Court of Appeals of Indiana.

July 19, 2005.

Transfer Denied Sept. 8, 2005.

---

Patrick R. Ragains, Smith & Ragains, Anderson, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Alfred Johnson Jr. appeals his convictions of two counts of aiding, inducing, or causing dealing in cocaine, as Class B felonies.[1] He raises four issues, which we restate as:

1. Whether the trial court erred when it denied Johnson's motion to suppress the phone numbers the police obtained from his pager;

2. Whether the evidence was sufficient to support Johnson's convictions;

3. Whether the trial court erred by admitting certain evidence; and

4. Whether Johnson's aggravated sentences violate his Sixth Amendment right to a jury trial.

We affirm.

## FACTS AND PROCEDURAL HISTORY [2]

Larry Reason drove a cab in Anderson, Indiana, and on two occasions had given rides to Alfred Johnson, whom Reason knew as "J." (Appellant's App. at 245, 248.) During the second of those occasions, on April 1, 2003, Johnson offered to sell cocaine to Reason and gave Reason his pager number. Reason, who was also a confidential informant for the Anderson Police Department's Drug Task Force, contacted Detective Clifford Cole to let him know he could make a buy that night.

Reason paged the number Johnson had given him, and Johnson called Reason back. They agreed to meet at the Lemon Drop to exchange money and drugs. Detective Cole searched Reason, gave him $150, and placed an electronic wire on him. Reason drove to the Lemon Drop and paged Johnson again. Johnson called him back and told him a white male would be coming to make the exchange. Johnson paid Phillip Jackson $50 to deliver the cocaine to Reason. Jackson and Reason made the exchange, and Jackson returned to his apartment, where he gave the money to Johnson and Johnson gave him $50.

One week later, Reason paged Johnson to arrange another buy. Johnson called Reason back and told him to pull into the driveway at Johnson's house and honk his horn. Reason and Detective Cole drove to Johnson's driveway and honked the car

---

1. Ind.Code § 35–48–4–1(A)(1) (dealing in cocaine); Ind.Code § 35–41–2–4 (aiding, inducing or causing).

2. We remind Johnson's counsel, as we have on numerous prior occasions, that a statement of the facts in an Appellant's Brief is not to be a witness by witness summary of the evidence presented at trial. Ind. Appellate Rule 46(A)(6)(c). Rather, it is to be a concise statement of the facts in the light most favorable to the judgment. *Id.* The statement should tell a coherent story, which Johnson's statement wholly fails to do.

horn. Jackson came out and exchanged cocaine for $150. Jackson took the money back into the house, gave it to Johnson, and received $50 from Johnson.

On April 9, 2003, Detective Cole, Detective Kevin Early and Detective Stephan Blackwell learned Johnson would be at the apartment of Ryan Traub to cook cocaine. Detective Early found out from Anderson Police Department dispatch that an active arrest warrant existed for Johnson. The Detectives went to Traub's apartment and arrested Johnson. The Detectives conducted a search incident to that arrest and confiscated Johnson's pager. Detective Early scrolled through the numbers stored in Johnson's pager and saw what he believed to be dollar amounts indicating requests for drugs. When Detective Cole scrolled through the numbers in the pager, he noted Reason's cell phone number was in the list.

The State charged Johnson with two counts of aiding, inducing, or causing dealing in cocaine. Johnson moved to suppress the phone numbers in his pager's memory. The trial court denied that motion, and a jury found Johnson guilty of both counts.

After a sentencing hearing, the trial court found three aggravating factors: Johnson had a criminal history, prior attempts at rehabilitation had failed, and Johnson was in need of rehabilitative treatment best provided by commitment to a penal facility.[3] The court sentenced Johnson to twenty years on each count, to be served concurrently, with ten years on each count suspended to probation.

## DISCUSSION AND DECISION

### 1. *Motion to Suppress*

■ The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. U.S. Const. Amend. IV. The Fourteenth Amendment extended to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures. *Figert v. State*, 686 N.E.2d 827, 830 (Ind.1997). A search conducted without a warrant is presumed unreasonable unless the State can demonstrate the search was permitted by one of the exceptions to the warrant requirement. *Van-Pelt v. State*, 760 N.E.2d 218, 221 (Ind.Ct. App.2001). One exception to the warrant requirement is a search incident to a lawful arrest. *White v. State*, 772 N.E.2d 408, 411 (Ind.2002). An arrest is lawful if it is supported by probable cause. *VanPelt*, 760 N.E.2d at 222. Upon arrest, police may search the arrestee and the area within the arrestee's immediate control. *White*, 772 N.E.2d at 411.

Detective Cole arrested Johnson pursuant to an arrest warrant issued because Johnson violated his probation. Just before the Detectives went to the location where they believed Johnson would be, Detective Cole called the Anderson Police Department dispatcher to confirm there was an arrest warrant pending for Johnson. Upon arrest, the Detectives searched Johnson and found the pager. Accordingly, Johnson's arrest and the seizure of his pager were valid.

Nevertheless, Johnson claims the Detectives violated his Fourth Amendment right to be free from illegal search when they scrolled through the numbers stored in his pager's memory. Johnson claims *Smith v. State*, 713 N.E.2d 338 (Ind.Ct.App.1999), *trans. denied*, is directly on point. He is mistaken.

In *Smith*, police were conducting a traffic stop. During that stop, they asked the

---

**3.** We admonish Johnson's counsel for failing to include in the Appellant's Brief a copy of the judgment as required by App. R. 46(A)(10).

owner of the car if they could search the car for "guns, drugs, money, or illegal contraband." *Id.* The owner consented to that search. During the search, however, police took the owner's cell phone to their police car and conducted a "short-out technique" that permits police to determine whether the cell phone is stolen. *Id.* The evidence from the phone confirmed the phone was billing calls to someone other than the owner.

We reversed the trial court's denial of the owner's motion to suppress because the owner's consent to search his car for drugs, guns, money, and illegal contraband could not reasonably be interpreted as consent to search the contents of his phone's memory. That memory could contain neither drugs nor weapons nor money. *Id.* at 344.

Here, Detective Early and Detective Cole were searching pursuant to an arrest, not pursuant to Johnson's consent. Therefore, their search was not limited by the scope of consent. *Cf. id.*

Moreover, in *Smith* we discussed the applicability of the "plain view doctrine," which "requires that law enforcement officials have probable cause to believe the evidence will prove useful in solving a crime." *Id.* at 345. Reason had made two controlled buys of cocaine by calling a pager number Johnson gave Reason. The Detectives therefore had probable cause to believe the information in the pager would prove useful in solving the identity of the cocaine dealer. *Compare id.* (When search commenced pursuant to a routine traffic stop, the supreme court held: "Given the widespread use of cellular phones today, the mere possession of one does not provide the basis for probable cause or even a reasonable suspicion to believe the possessor has committed or may have committed a crime."). The trial court did not err when it denied Johnson's motion to suppress.

### 2. *Sufficiency of Evidence*

When we review challenges to the sufficiency of the evidence, we may neither reweigh the evidence nor assess the credibility of the witnesses. *Iddings v. State*, 772 N.E.2d 1006, 1015 (Ind.Ct.App. 2002), *trans. denied* 783 N.E.2d 700 (Ind. 2002). Rather, we look at the evidence and reasonable inferences therefrom most favorable to the conviction. *Id.* If substantial evidence of probative value would have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt, then we must affirm the jury's finding. *Id.*

Reason testified he had given Johnson rides twice in his cab and he had once talked to Johnson on the telephone when Reason was working in the cab office as a dispatcher. Reason explained how Johnson offered to sell him cocaine and how each of the transactions transpired, with Reason paging Johnson and Johnson calling him back. Jackson testified Johnson paid him $50 each time he delivered cocaine to Reason. Reason's telephone number was in Johnson's pager. Jackson testified Johnson used Jackson's cell phone to return Reason's pages, and Jackson's cell phone number was the same as the number Reason testified Johnson used to call him back after the pages. This is sufficient evidence Johnson was aiding, inducing, or causing Jackson to deal cocaine to Reason.

### 3. *Admission of Evidence*

The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of discretion by the trial court resulting in the denial of a

fair trial. *Williams v. State,* 782 N.E.2d 1039, 1045 (Ind.Ct.App.2003), *trans. denied* 792 N.E.2d 43 (Ind.2003). A decision is an abuse of discretion if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the decision, we consider the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

### a. *Fight*

 Johnson argues the trial court erred when it admitted Jackson's testimony regarding a fight Johnson had with Jackson, in which Johnson "sucker punched" Jackson and brandished an automatic weapon.[4] (Tr. at 323.) "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Ind. Evidence Rule 404(b). The well-established rationale behind Evid. R. 404(b) is that the jury is precluded from making the "forbidden inference" that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Thompson v. State,* 690 N.E.2d 224, 233 (Ind.1997).

 Assuming *arguendo* the evidence regarding the fight between Jackson and Johnson was improperly admitted under Rule 404(b), we would not reverse. Errors in the admission of evidence may be disregarded as harmless "unless the errors affect the substantial rights of the party." *Wilson v. State,* 770 N.E.2d 799, 802 (Ind.2002). To determine whether Johnson's substantial rights were violated, we consider "the probable impact of that evidence upon the jury." *Id.* In light of the substantial evidence regarding Johnson's guilt, we fail to see how evidence regarding the fight between Jackson and Johnson could have had any impact on the jury's decision. *See, e.g., id.* Accordingly, we need not reverse Johnson's convictions due to the admission of that evidence. *See id.*

### b. *Audio Tapes*

 Johnson also argues the trial court erred when it admitted into evidence the two audiotapes of Jackson selling the cocaine to Reason. He asserts "[t]he tapes were not clearly audible, the State prepared transcripts, and the jury listened to them twice, all prejudicial to Johnson." (Appellant's Br. at 28.) However, he has not demonstrated he was prejudiced by the admission of the tapes.

The trial court admonished the jury to rely on the audiotapes if they found discrepancies between the audiotapes and the transcripts. Such an admonition cures any error caused by giving the jury a copy of a transcript of an audiotape or videotape. *Roby v. State,* 742 N.E.2d 505, 508 (Ind. 2001).

Moreover, in light of the testimony of Reason, the testimony of Jackson, and the fact that Reason's phone number was stored in Johnson's pager, we find it un-

---

4. We note Johnson's counsel opened the door to this testimony by asking whether Jackson and Johnson were on "good terms" and whether they had "a confrontation the last time [they] were together." (Tr. at 322.) Jackson responded by saying, "Oh yeah, he sucker punched me and ..." before Johnson's counsel could stop him. (*Id.*) Then on re-direct examination, the trial court permitted Jackson to answer the State's follow-up questions regarding what happened during the fight. "Otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence." *Kubsch v. State,* 784 N.E.2d 905, 919 n. 6 (Ind.2003).

likely the jury would have reached a different conclusion if the trial court had excluded the tapes. Accordingly, we would not reverse even if the trial court erred by admitting the tapes. *See Wilson*, 770 N.E.2d at 802 (affirming despite erroneous admission of evidence because error was harmless).

### 4. *Sentencing*

█ Finally, Johnson alleges his Sixth Amendment right to a jury trial was violated when the trial court imposed an enhanced sentence without a jury finding aggravators pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* — U.S. ——, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004).

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Based on that holding, the *Blakely* Court held the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of any aggravating factors used to increase a sentence above the presumptive sentence assigned by the legislature. 124 S.Ct. at 2536. An exception to that rule is the fact of a prior conviction. *Id.*

Johnson was convicted of two counts of aiding, inducing, or causing dealing in cocaine as Class B felonies. The presumptive sentence for a Class B felony is ten years, and the statute permits ten years to be added for aggravating factors. Ind. Code § 35–50–2–5. The trial court found three aggravators and no mitigators. The three aggravators were: (1) Johnson's prior criminal history; (2) prior attempts at rehabilitation had not been successful; and (3) Johnson needs rehabilitative treatment best provided by commitment to a penal facility. The trial court sentenced Johnson to twenty years for each count and ordered the sentences served concurrently.

Johnson asserts his sentences violate *Blakely*. However, we need not review his argument regarding the trial court's findings of aggravators not found by a jury. Our supreme court recently held *Blakely* is not implicated when the aggregate sentence imposed by the trial court does not exceed the aggregate sentence the trial court could have imposed by ordering the presumptive sentences for all crimes served consecutively. *Estes v. State*, 827 N.E.2d 27, 29 (Ind.2005) ("We need not address Estes's arguments on this point, however, because the trial court might have imposed essentially the same 267 years of jail time by ordering other sentences served consecutively ... and a court's authority to order consecutive sentences was not affected by *Blakely*.").

Because the trial court ordered Johnson to serve the twenty-year sentences concurrently, the aggregate sentence did not exceed what Johnson could have received if the trial court had ordered Johnson to serve two ten-year sentences consecutively. We need not address whether the trial court's aggravators violated *Blakely*.

Affirmed.

DARDEN, J., and BARNES, J., concur.