# FOR PUBLICATION



FILED

May 25 2012, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Division
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYJUAN J. DIXON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1110-CR-482 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-0910-MR-9[1]

**May 25, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

---

[1] Documents in the Appellant's Appendix chronicle the trial court cause number as 45G01-0910-MR-9; the transcript and exhibits list the cause number as 45G01-0901-MR-9.

## Case Summary

Tyjuan J. Dixon ("Dixon") was convicted of Murder, a Felony,[2] and two counts of Attempted Murder, as Class A felonies.[3]  He now appeals.

We affirm.

## Issue

Dixon raises a single issue for our review, which we restate as whether the trial court abused its discretion when it permitted the State to introduce extrinsic evidence, in the form of testimony from a police detective, as impeachment of another of the State's witnesses.

## Facts and Procedural History

On the morning of October 12, 2009, Dixon's half-brother, Edward Bond ("Bond") was living with his girlfriend, Catrenna Walker ("Walker"), in one unit of a two-unit duplex in the Delaney housing project in Gary.  Bond's car was not operating at the time, and Bond had asked one of his neighbors, James Smith ("Smith") for a ride.

Around 10:00 a.m., Bond went to Smith's residence and knocked on the door.  Smith was eating breakfast with his wife, Lakeisha Randolph ("Lakeisha"), and sister-in-law, Gabrielle Randolph ("Gabrielle").  Gabrielle answered the door, and Bond eventually asked for "the man of the house."  Tr. at 200.  Gabrielle told Smith; Smith looked out the window, saw Bond, and decided not to give Bond a ride at that time.

Soon afterward, Smith and Gabrielle went outside to clean the interior of Gabrielle's

---

[2] Ind. Code § 35-42-1-1.
[3] I.C. §§ 35-41-5-1 & 35-42-1-1.

car. Bond again approached Smith, and an argument ensued that eventually involved both men, Gabrielle, Lakeisha, and Walker. A crowd assembled in a nearby yard, and at some point during the argument, Walker called Dixon, hoping that Dixon would calm Bond.

Dixon arrived soon thereafter and walked to the door of the unit Bond and Walker shared. Dixon spoke briefly with Bond and Walker and tried to hand Bond a handgun, which Bond refused to take. Walker moved to push Bond into the home. Dixon, however, remained outside, turned the handgun on Smith, Lakeisha, and Gabrielle, and began to fire the weapon.

All three attempted to flee from Dixon, but were unsuccessful. Smith was shot six times, with wounds in his head, chest, arm, and hip; Smith died at the scene. Lakeisha was shot six times, with wounds to her chest and right arm; Lakeisha was hospitalized for five months because of her injuries, was comatose for some portion of her hospital stay, and after release from the hospital endured ongoing respiratory problems and medical difficulties related to the loss of her spleen and injury to her pancreas. Gabrielle was shot twice in her hip and once on her buttocks, was hospitalized for two weeks, and required rehabilitation.

On October 14, 2009, Detective Arturo Azcona ("Detective Azcona") spoke with Gabrielle and showed her a photographic line-up of individuals matching the description of the shooter at the scene; Gabrielle identified a photograph of Dixon. On March 22, 2010, after Lakeisha was released from the hospital, Detective Azcona showed her a different photographic line-up; Lakeisha also identified Dixon as the shooter.

On October 23, 2009, the State charged Dixon with one count of Murder and two

3

counts of Attempted Murder. A warrant for Dixon's arrest was issued that day; Dixon was arrested on December 23, 2009.

A jury trial was conducted from July 25, 2011, to July 28, 2011. During the trial, Walker testified about the incident and stated that she could not recall whether Dixon got out of his car upon arriving at the duplex. The State showed Walker a signed, written version of her statement to police wherein she stated that Dixon got out of his car and walked toward the house. Walker reaffirmed her testimony and indicated that she did not recall telling police that Dixon had gotten out of his car upon arriving at the duplex. As a result, at the close of its evidence, the State called Detective Azcona, who had taken Walker's statement, to provide extrinsic impeachment of Walker's testimony. Dixon objected, and the trial court overruled the objection and instructed the jury that Detective Azcona's testimony was for impeachment purposes only.

At the conclusion of the trial, the jury found Dixon guilty of all three charges. On October 6, 2011, the trial court entered judgments of conviction against Dixon and sentenced him to sixty-two years imprisonment for Murder and thirty-seven years imprisonment for each count of Attempted Murder, with the sentences to be served consecutively, for an aggregate sentence of 136 years.

This appeal followed.

### Discussion and Decision

Dixon appeals his conviction, arguing that the trial court erred when, for impeachment purposes, the court permitted the State to recall Detective Azcona and admitted into evidence

4

the detective's testimony concerning Walker's statement to police and the written statement itself. We review a trial court's decision concerning the admission of evidence for an abuse of discretion, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Kendall v. State, 790 N.E.2d 122, 126 (Ind. Ct. App. 2003), trans. denied. Even when a decision on the admissibility of evidence is an abuse of discretion, we will not reverse a judgment where that error is harmless, that is, where the error did not affect the substantial rights of a party. Ind. Trial Rule 61; Appleton v. State, 740 N.E.2d 122, 124 (Ind. 2001).

The Indiana Rules of Evidence govern the use of extrinsic evidence for impeachment of a witness. "The credibility of a witness may be attacked by any party, including the party calling the witness." Ind. Evidence Rule 607. Where a party seeks to examine a witness concerning a prior statement, the party need not show the statement to the party or disclose the statement's contents to the witness, though it must be disclosed to opposing counsel upon request. Evid. R. 613(a). "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded and opportunity to interrogate the witness thereon." Evid. R. 613(b). Extrinsic evidence of impeachment is not, however, admissible where impeachment is complete because the witness "admitted himself a liar," that is, where the witness acknowledges having made the prior inconsistent statement. Appleton, 740 N.E.2d at 126 (citing United States v. Soundingsides, 820 F.2d 1232, 1240-41 (10th Cir. 1987), for the proposition that there is no basis for introduction of extrinsic evidence of prior

5

inconsistent statement where witness does not deny making the inconsistent statement).

Here, Dixon contends that Walker's testimony that she did not remember telling Detective Azcona that she saw Dixon get out of his car was not inconsistent with her statement to Detective Azcona that Dixon did get out of his car and a description of Dixon's clothes. Dixon directs our attention to Dunlap v. State, 761 N.E.2d 837 (Ind. 2002), in which our supreme court held that, for the purposes of Rule 613(b), "a statement at trial of 'I am not sure' or 'I don't remember' is not necessarily inconsistent with an earlier statement that provides the answer to the question being asked." Id. at 845.

In Dunlap, a witness testified that she had attempted to turn the defendant around to prevent a shooting, but was unsure whether she was holding onto or touching the defendant when the shots were fired. Id. at 844. The defendant confronted the witness with a transcription of her statement to police, during which she told police that she did not have hold of the defendant until after the first shot was fired, and asked whether the witness recalled making that statement to police. Id. The witness did not recall giving police that description of the events. Id. Dunlap then attempted to introduce into evidence the entirety of the witness's transcript for the purpose of impeachment under Rule 613(b); the State objected that the statements were not inconsistent, and the trial court agreed. Id. Our supreme court concluded, "the differences between [the witness's] trial testimony and her statements in the transcribed police interview [are] within the ambit of the trial court's discretion to determine inconsistency," and thus found no error in the trial court's decision to deny admission of the transcript. Id. at 845.

6

A similar situation obtains here. Walker neither admitted nor denied making the prior statement regarding Dixon's attire and conduct, but testified that she did not recall making the statement, could not recall at trial whether she saw Dixon get out of the car, and reading the written transcript of her statement did not refresh her memory.[4] As in Dunlap, this does not take the decision on whether to admit Detective Azcona's testimony and the written version of Walker's statement outside "the ambit of the trial court's discretion to determine inconsistency." Id. at 845. We therefore find no error in the trial court's decision to admit this evidence.

Even if the trial court had abused its discretion, however, any error was harmless. Both Lakeisha and Gabrielle testified that they saw Dixon get out of his car and go toward the front of the duplex and identified Dixon both at trial and during their respective statements to police. Gabrielle testified that she saw Dixon attempting to hand a handgun off to Bond, that she saw Bond refuse to take possession of the firearm, and that she was looking in Dixon's direction as he began shooting. Lakeisha testified that the gunshots came from where Dixon was standing. Both Lakeisha and Gabrielle testified that a large number of shots were fired at them. Lieutenant Henry Hatch, a ballistics analyst with the Lake County Sheriff's Department crime lab, testified that all of the bullets and cartridge casings recovered from the scene that were capable of being analyzed came from a single firearm. Thus, there is substantial independent evidence upon which a jury could have convicted

---

[4] The transcript was labeled as Exhibit 63 at trial, but was not included among the exhibits submitted to this Court along with the trial record.

7

Dixon, and we therefore conclude that any error in the admission of Detective Azcona's testimony and Walker's prior statement was harmless.  T.R. 61; <u>Appleton</u>, 740 N.E.2d at 126.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.