Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 18 2012, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT TAYLOR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1201-CR-50 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jeffrey Marchal, Judge
Cause No. 49G06-1011-FB-86868

**September 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Robert Taylor appeals his conviction for Rape,[1] a class B felony. He presents the following restated issues for review:

1. Did the trial court abuse its discretion by allowing into evidence certain DNA evidence?

2. Did the in-court identification of Taylor by the victim violate Taylor's due process rights?

3. Did the trial court abuse its discretion by allowing evidence of the victim's statements made to a forensic nurse examiner?

We affirm.

On June 27, 2009, S.S. was homeless and living in a shelter on 10th Street near downtown Indianapolis. Late that Saturday morning, she was walking down 10th Street toward Pennsylvania Avenue to a location where she could have a free lunch in a park. While walking past a construction zone, a man pulled his car up by the curb and asked if she needed a ride. S.S. declined. Shortly thereafter, the man grabbed her from behind and dragged her up a hill where he threw her on the ground, pulled off her shorts and underwear, and raped her. After ejaculating inside her, the man then went back down the hill and drove away.

Distraught and unable to call 911, S.S. dressed and then walked to the park for lunch. Several hours later, S.S. encountered a good friend and told her about the rape. The friend helped her call police. S.S. described her attacker as a black male in his twenties or thirties, about five feet and ten inches tall, with short hair and a thin build. Detective David Everman

---

[1] Ind. Code Ann. § 35-42-4-1 (West, Westlaw current with all 2012 legislation).

took S.S. to Methodist Hospital to be examined by a sexual assault nurse examiner (SANE). SANE Robin Brannan collected swabs from S.S., as well as the underwear S.S. wore after the attack. A panty liner was attached to the underwear. Brannan apparently did not notice the panty liner, as it was not separated from the underwear or documented. The underwear with the panty liner were bagged together, sealed, and included in the rape kit. Thereafter, the rape kit, which was stored in a locked refrigerator, was collected by the Marion County Crime Lab and securely stored at the lab.

Shannin Guy, a forensic scientist with the Marion County Forensic Services Agency, conducted serology and DNA analysis on the material collected in the rape kit. Guy identified the presence of seminal material on the vaginal cervical swab, the speculum swab, the vaginal wash, and the panty liner. She then performed DNA analysis on a portion of the seminal material collected from each of these four items. Analysis revealed that the male DNA profiles from each item matched, identifying the same unknown male individual. Guy submitted the profile from the seminal material found on the panty liner to CODIS,[2] which resulted in a match to Taylor in August 2010. After obtaining a buccal swab from Taylor, Guy performed further DNA analysis, directly matching his DNA to the seminal material found on the vaginal cervical swab, the speculum swab, the vaginal wash, and the panty liner.

Detective Everman met with S.S. on October 15, 2010 and presented her with a photo array. S.S. was unable to identify her attacker. The detective then directed her to Taylor's picture and indicated that there had been a DNA match.

3

On November 18, 2010, the State charged Taylor with class B felony rape and class D felony criminal confinement. Taylor unsuccessfully sought to suppress the DNA results. Following a bench trial on December 7, 2011, Taylor was found guilty as charged. A judgment of conviction, however, was entered only on the rape charge, and the trial court imposed an executed sentence of seventeen years. Taylor now appeals, asserting a number of errors in the admission of evidence at trial.

The decision to admit or exclude evidence lies within the trial court's sound discretion. *Filice v. State*, 886 N.E.2d 24 (Ind. Ct. App. 2008), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Dixon v. State*, 967 N.E.2d 1090 (Ind. Ct. App. 2012). We will not reverse absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Johnson v. State*, 831 N.E.2d 163 (Ind. Ct. App. 2005), *trans. denied.* "Even when a decision on the admissibility of evidence is an abuse of discretion, we will not reverse a judgment where that error is harmless, that is, where the error did not affect the substantial rights of a party." *Dixon v. State*, 967 N.E.2d at 1092.

1.

Taylor initially challenges the admission of the DNA evidence obtained from the panty liner. He claims the State failed to establish a sufficient chain of custody for the panty liner because collection of the item was not noted at the hospital by SANE Brannan.

---

[2]  CODIS stands for Combined DNA Index System and is a national database of DNA profiles. Guy explained that she only submitted the profile obtained from the panty liner because the other profiles matched "so there was no need to put all the profiles in." *Transcript* at 207.

4

It is well established in Indiana that an exhibit is admissible if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times. That is, in substantiating a chain of custody, the State must give reasonable assurances that the property passed through various hands in an undisturbed condition. We have also held that the State need not establish a perfect chain of custody whereby any gaps go to the weight of the evidence and not to admissibility.

*Culver v. State*, 727 N.E.2d 1062, 1067 (Ind. 2000) (citations omitted). Further, "[t]o mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with." *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002).

In the instant case, S.S. testified that she was wearing a panty liner with her underwear after the attack and that her underwear was provided to SANE Brannan to be included in the rape kit. Further, S.S. identified at trial the underwear and attached panty liner contained in State's Exhibit 7 as the ones she wore to the sexual assault exam.

Although Brannan was apparently not aware of the attached panty liner, the evidence indicates that S.S.'s underwear was placed in an evidence bag that was then properly sealed and initialed. On the outside of the evidence bag, Brannan noted that it contained the victim's underwear worn after the attack.

Taylor does not challenge the chain of custody of the rape kit after Brannan placed it in the locked refrigerator at the hospital. The forensic evidence technician who picked up the rape kit from the hospital testified that the kit was properly sealed, as were all items of evidence inside. The evidence bag containing the victim's underwear was first opened by Guy, the DNA analyst. She testified that the evidence bag was sealed with no evidence of tampering when she received it for testing. Upon opening the evidence bag in question, Guy

5

determined that there was a panty liner inside the underwear. As set forth above, testing of the panty liner ultimately led to the DNA identification of Taylor.

We conclude that Brannan's failure to make a notation of the panty liner or to remove and separately bag it, though contrary to standard protocol, is not fatal to the chain of custody.[3] The evidence strongly suggests the exact whereabouts of the panty liner at all times – attached to the underwear inside the marked and sealed evidence bag. Thus, the trial court did not abuse its discretion by admitting the DNA evidence obtained from the panty liner.

Moreover, even if the DNA evidence related to the panty liner should have been excluded, there was other DNA evidence linking Taylor to the rape. Guy explained that the male profiles obtained from the vaginal cervical swab, the speculum swab, and the vaginal wash were the same as the male profile from the panty liner. Thus, contrary to Taylor's assertions on appeal, it is clear that the DNA profile obtained from any one of these samples would have produced the same match through CODIS. Further, after obtaining the buccal swab from Taylor, Guy compared his DNA to each of the sperm fractions from the vaginal cervical swab, the speculum swab, and the vaginal wash. All resulted in a match. To the extent one of the four DNA matches was improperly admitted, which it was not, the other three conclusively established his identity. Accordingly, any error in the admission of the evidence obtained from the panty liner would have been harmless.

---

[3]    Taylor correctly observes that the State "bears a higher burden to establish the chain of custody of 'fungible' evidence, such as blood and hair samples, whose appearance is indistinguishable to the naked eye." *Troxell v. State*, 778 N.E.2d at 814. A panty liner is not the type of fungible evidence addressed in *Troxell*. *See also Baker v. State*, 449 N.E.2d 1085, 1088 (Ind. 1983) (hospital report showing the presence of sperm in

6

a sample taken from the victim found inadmissible where there was "a total absence of proof of the chain of custody").

2.

Taylor contends that S.S. was improperly allowed to identify him in court.[4] He claims her in-court identification was tainted a year before trial by the fact that Detective Everman directed her to Taylor's picture as the man with the DNA match immediately after she was unable to identify him in the photo lineup.

Regardless of whether the trial court abused its discretion by allowing the in-court identification, we find that any error was harmless. At the conclusion of the bench trial, the court acknowledged that the in-court identification made two and one-half years after the attack was shaky at best. The trial court observed:

> Now this wasn't the greatest testimony I've heard with respect to ID…. If this case rested only on ID testimony of [S.S.] then this is a much weaker case for the State. But it is more than that. This is a DNA case. And the DNA confirms conclusively and without hesitation that Robert Taylor is the source of the DNA evidence in this case.

*Transcript* at 270-71. We agree with the trial court. Taylor was conclusively identified by the DNA he left inside S.S.

3.

Taylor argues that the SANE was improperly allowed to testify regarding what S.S. told her during the rape kit examination. Specifically, he complains, "the nurse testified that S.S. said she had been sexually assaulted by an unknown African American male, that her

---

[4] Taylor also asserts that S.S.'s pre-trial identification of him was unduly suggestive. The record reveals, however, that S.S. was unable to identify him prior to trial. To be sure, when objecting to the in-court identification of his client, defense counsel indicated, "[s]he could not make an out-of-court identification". *Transcript* at 93. Further, Detective Everman testified that S.S. was unable to identify Taylor in the photo array.

8

lower back hurt, that she was thrown in the grass, and that the man put his penis in her vagina." *Appellant's Amended Brief* at 9-10. Taylor contends that these statements should not have been admitted as exceptions to the hearsay rule under Ind. Evidence Rule 803(4) because they did not constitute statements made for the purpose of medical diagnosis or treatment.

Once again, we need not reach the merits of Taylor's claim because, as argued by the State, any error in this regard is harmless, and Taylor does not argue otherwise. The challenged statements reported by the SANE were cumulative of other evidence, particularly S.S.'s and Detective Everman's testimony, regarding the details of the sexual assault. *See Carter v. State*, 683 N.E.2d 631, 632 (Ind. Ct. App. 1997) ("[a]n error in the admission of evidence is not prejudicial if the evidence is merely cumulative of other evidence in the record"), *trans. denied*. Evidence independent of the challenged statements established that S.S. had been raped by an unknown African American man. The DNA evidence subsequently linked Taylor directly to the rape.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.