**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 11 2014, 10:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| STEPHEN T. PEROSKY, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 45A03-1307-CR-255 |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-1107-FC-86

**February 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Stephen T. Perosky was convicted after a jury trial of Disarming a Law Enforcement Officer as a Class C felony,[1] two counts of Battery as Class D felonies,[2] and two counts of Resisting Law Enforcement as Class D felonies,[3] and was sentenced to an aggregate term of imprisonment of nine years.

We affirm.

## Issues

Perosky raises four issues for our review, which we consolidate and restate as:

I.      Whether the trial court erred in admitting evidence;

II.     Whether the prosecutor engaged in misconduct during closing argument; and

III.    Whether the trial court failed to identify significant mitigating factors.

## Facts and Procedural History

In the early morning hours of July 18, 2011, Perosky woke up his girlfriend, Candace Kruse, pulled her out of bed by her hair, dragged her around the house, and accused her of being unfaithful. Kruse grabbed the telephone, dialed 911, and then hung up. Merrillville Police Department Corporal James Bogner and Officer Joshua Vandy Bogurt were dispatched to the scene due to the 911 hang-up call. Kruse and Perosky both came out the front door, and Kruse was shaking. Perosky told the officers that Kruse would tell them what had happened and invited the officers into the house. Based on Kruse's demeanor, Corporal

---

[1] Ind. Code § 35-44-3-3.5.

[2] I.C. § 35-42-2-1.

[3] I.C. § 35-44-3-3.

Bogner wanted to keep Perosky and Kruse out of the house to be sure they were not a threat to each other or the officers. Therefore, when Perosky turned to go inside the house, Corporal Bogner gently touched Perosky's arm and asked him to stay outside.

Perosky responded by shoving Corporal Bogner, and Officer Vandy Bogurt reached in to restrain Perosky. Because traditional restraint methods did not work on Perosky, the corporal and the officer used their body weights to put Perosky on the ground. Although both officers, who collectively weighed between 400 and 500 pounds, were sitting on Perosky, he was able to stand up with the officers on his back. Perosky was screaming, "I'm shitting my pants. . . . You're killing me. . . . I'm going to die." Tr. p. 65. Based upon Perosky's screaming and super-human strength, Corporal Bogner believed that Perosky was under the influence of "something." Tr. p. 66.

Corporal Bogner and Officer Vandy Bogurt fell to the ground, and Officer Vandy Bogurt removed his Taser and deployed it on Perosky. A Taser is intended to incapacitate a person, but Perosky spun around and ran towards the officers. According to Corporal Bogner, in his sixteen years in law enforcement, he had never encountered an individual with such strength. Officer Vandy Bogurt used the Taser on Perosky again, but was still unable to subdue him. Perosky grabbed Officer Vandy Bogurt and began punching him in the face. When Officer Vandy Bogurt dropped the Taser, Perosky picked it up and used it on Corporal Bogner. As Corporal Bogner was falling backwards from the effects of the Taser, Perosky reached for the corporal's gun. Officer Vandy Bogurt punched Perosky causing him to drop

3

the Taser, and Corporal Bogner sprayed pepper spray in Perosky's eyes. As the officers continued to struggle with Perosky, he bit Corporal Bogner's hand.

When three additional officers arrived at the scene, Perosky charged one of them, who also Tasered Perosky. Perosky continued to fight with all five officers, and during the struggle Perosky bit Corporal Bogner's forearm, breaking the skin. The five officers were eventually able to restrain Perosky, who continued to struggle and shout obscenities. When paramedics arrived on the scene, paramedic Jason Beida observed that Perosky appeared to be under the influence of a controlled substance. Beida gave Perosky a sedative and restrained him on a gurney. Perosky continued to be combative on the ride to the hospital.

As soon as Perosky left for the hospital, Corporal Bogner went into the home and took a statement from a crying Kruse, who had a bump on her head and red marks on her face. She seemed relieved that Perosky has been taken into custody. Kruse told Corporal Bogner that Perosky had accused her of being unfaithful. According to Kruse, Perosky pulled her out of bed by her hair and dragged her around the house, banging her head into objects around the house. Kruse also told Corporal Bogner that Perosky was smoking "Space Cadet" and using "Bath Salts."[4]

The State charged Perosky with disarming a law enforcement officer as a Class C felony, two counts of battery as Class D felonies, using a stun gun on a law enforcement officer as a class D felony, strangulation as a class D felony, and two counts of resisting law enforcement as class D felonies. At trial, the trial court allowed Corporal Bogner to testify

---

[4] "Space Cadet" is a hallucinogenic herbal drug. "Bath Salts" is a synthetic drug, which is described as a cross between methamphetamine and acid.

4

over objection that immediately after Perosky attacked the officers and was taken to the hospital in the ambulance, Kruse told him that Perosky used "Space Cadet" and "Bath Salts." The trial court admitted the Corporal's testimony pursuant to the excited utterance exception to the hearsay rule. The trial court also found that paramedic Beida was a skilled witness qualified to testify regarding the effect of "Bath Salts."

During closing argument rebuttal, Perosky argued that the police officers beat him, put him in the hospital, and then fabricated a story about everything that happened. Specifically, Perosky argued that the police created a "comic book tally." (Tr. p. 530). In the State's rebuttal argument, the State read a passage regarding the duties, risks faced, and sacrifices made by police officers. Perosky did not object.

The jury convicted Perosky of disarming a police officer, two counts of battery, and two counts of resisting law enforcement. At the sentencing hearing, the trial court found one mitigating factor and seven aggravating factors, and sentenced Perosky to five years for disarming a police officer, two years each for the two counts of battery, and two years each for the two counts of resisting law enforcement. The trial court ordered the five years for disarming a police officer and the two years each for the two counts of battery to run consecutively to each other, and the two years each for the two counts of battery to run concurrently with each other and the other sentences, for a total executed sentence of nine years.

Perosky appeals his convictions and sentence.

## Admission of Evidence

The decision to admit or exclude evidence lies within the trial court's sound discretion. Filice v. State, 886 N.E.2d 24 (Ind. Ct. App. 2008), trans. denied. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Dixon v. State, 967 N.E.2d 1090 (Ind. Ct. App. 2012). We will not reverse absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. Johnson v. State, 831 N.E.2d 163 (Ind. Ct. App. 2005), trans. denied.

Perosky first argues that the trial court erred in allowing Corporal Bogner to testify over objection that immediately after Perosky attacked the officers and was taken to the hospital in the ambulance, Kruse told him that Perosky used "Space Cadet" and "Bath Salts." Specifically, Perosky contends that Kruse's statement to Corporal Bogner does not qualify as an excited utterance because although she was crying at the time she made the statement, she seemed relieved that Perosky had been taken into custody.

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ind. R. Evid. 803(2). To meet the excited utterance exception, three elements must be present: 1) a startling event or condition has occurred; 2) the declarant made the statement while under the stress or excitement caused by the event or condition; and 3) the statement was related to the event or condition. Teague v. State, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012).

This test is not mechanical, and admissibility turns on whether the statement is inherently reliable because the witness is under the stress of the event and unlikely to make

6

deliberate falsifications.  Id.  The lapse of time is not dispositive, but if a statement is made long after a startling event, it is less likely to be an excited utterance.  Id.  The heart of the inquiry is whether the declarant was incapable of thoughtful reflection.  Id.

Here, our review of the evidence reveals that a startling event occurred when Perosky became involved in a physical altercation with police officers.  Krause, the declarant, made the statement regarding Perosky's use of "Space Cadet" and "Bath Salts" immediately after he was transported to the hospital and while she was still crying.  She was therefore still under the stress caused by the event.  Lastly, the statement related to Perosky's condition, including his superhuman strength and altered level of consciousness. Clearly, Krause, who had just seen a violent confrontation between her boyfriend and five police officers, and who was so upset that she was still crying, was not capable of thoughtful reflection when she made the statement.  The trial court did not err in admitting this evidence as an excited utterance.

We further note that even if the trial court had erred in admitting this evidence, we will not reverse the conviction if the error was harmless.  Turner v. State, 953 N.E.2d 1039, 1059 (Ind. 2011).  The error is harmless if there is substantial independent evidence of guilty satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction.  Id.  We agree with the State that "while the usage of bath salts helped explain [Perosky's] character, it was not a necessary element to any of his convictions, and if it had been excluded the State would still have presented sufficient

evidence to sustain each of his convictions." Appellee's Brief, p. 18. Any error in the admission of this evidence was therefore harmless.

Perosky further argues that the trial court erred in allowing paramedic Beida to testify as a skilled witness concerning the effects of "Bath Salts." Indiana Evidence Rule 701 provides that lay witnesses may provide testimony in the form of opinions or inferences, so long as the testimony is a) rationally based on the perception of the witness and b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. This rule encompasses persons whom the courts have labeled "skilled witnesses." Kubsch v. State, 784 N.E.2d 905, 922 (Ind. 2003). A skilled witness is a person who possesses a specialized knowledge short of that necessary to be declared an expert under Indiana Evidence Rule 702 but beyond that possessed by an ordinary juror. Id. A police officer's experience and training may provide the requisite foundation under Rule 701. See Stephenson v. State, 742 N.E.2d 463, 480 (Ind. 2001).

Here, our review of the evidence reveals that Beida, a licensed paramedic, received training on "Bath Salts" and its effects. Specifically, Beida's training department compiled magazine articles on the effects of "Bath Salts" and distributed them to paramedics as part of the paramedics' training. This training provided Beida with knowledge beyond that possessed by an ordinary juror. The trial court did not abuse its discretion in allowing Beida to testify as a skilled witness.

Prosecutorial Misconduct

8

Perosky also argues that the prosecutor engaged in misconduct during rebuttal closing argument when he read a passage regarding the duties, risks faced, and sacrifices made by police officers.  In reviewing a claim of prosecutorial misconduct, this court employs a two-step analysis, the first of which determines whether the prosecutor engaged in misconduct. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002).  If the court finds misconduct, it must then consider all the circumstances of the case and decide if the misconduct placed the defendant in grave peril to which he should not have been subjected.  Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006).  The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct.  Id.

Where, as here, the defendant did not object at trial to the alleged misconduct, a defendant must not only demonstrate prosecutorial misconduct, but also must establish that the misconduct rises to the level of fundamental error.  Id.  Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue and makes a fair trial impossible or constitutes clearly blatant violations of basic due process and presents a substantial potential for harm.  Id.

The statement the prosecutor made during closing argument of which Perosky now complains is:

> While you sleep there, when you are sitting down at Thanksgiving dinner or celebrating Christmas, we're out there.  When it's your children's birthday, we're out there.  When it's our children's birthday, we're still out there.  You put on a suit and dress to go to work, we strap on a ballistic vest and a gun.  An error by you means a demotion.  An error by us means a funeral.  When you tell your family, "See you tonight" as you leave for work, you mean it.  When we tell our family that, we pray that we will.  In your job one bad person is the talk of the office.  In our job, one bad officer makes the news and suddenly

9

we're all bad. In these headlines it's not what good we've done but how much better it could have been. While you are asleep with your spouse, ours sleep alone. So the next time you are out with your family or friend and you see a patrol car go by, remember inside the car is a person who sacrifices his or her life affectly (sic) and personally every day.

Tr. p. 541.

Based upon this portion of the State's argument, Perosky appears to argue that the prosecutor relied upon considerations that were not relevant to the issues of guilt or innocence. However, our review of the evidence reveals that in closing argument, Perosky argued that the police officers beat him and then fabricated a story about everything that had happened. In rebuttal closing argument, the prosecutor responded with this passage about the duties, risks faced, and sacrifices made by police officers. A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. Lopez v. State, 527 N.E.2d 1119, 1126 (Ind. 1988).

Further, Perosky has failed to specify how this passage made a fair trial impossible. Our review of the evidence reveals that the jury was presented with ample evidence of Perosky's guilt, and the fact that Perosky was acquitted by the jury of two of the Counts against him further indicates that the contested statements did not render a fair trial impossible. Accordingly, we cannot conclude that the State's use of this passage on rebuttal amounted to fundamental error.

Sentence

At the sentencing hearing, the trial court found as a mitigating factor that Perosky "ha[d] no prior acts or history of violence." Appellant's App. p. 123. The trial court also

10

found the following aggravating factors: 1) Perosky's criminal history, including convictions for Possession of Cocaine as a Class C felony and Possession of Marijuana as a Class D felony; 2) prior leniency by criminal courts had no deterrent effect on Perosky; 3) Perosky committed multiple offenses against separate victims; 4) Perosky's character was violent while under the influence of drugs; 5) while on bond in this case, Perosky was charged with additional offenses, including theft; 6) Perosky had been using "Bath Salts"; and 7) Corporal Bogner suffered a permanent injury as a result of Perosky's actions. Thereafter, the trial court sentenced Perosky to five years for disarming a police officer, two years each for the two counts of battery, and two years each for the two counts of resisting law enforcement. The trial court ordered the five years for disarming a police officer and the two years each for the two counts of battery to run consecutively to each other, and the two years each for the two counts of battery to run concurrently with each other and the other sentences, for a total executed sentence of nine years.

Perosky argues that the trial court erred in sentencing him. Specifically, he contends that the trial court failed to identify significant mitigating factors. The determination of a defendant's sentence is within the trial court's discretion. Newman v. State, 719 N.E.2d 832, 838 (Ind. Ct. App. 1999), trans. denied. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Guzman v. State, 985 N.E.2d 1125, 1132 (Ind. Ct. App. 2013). One way in which a court may abuse its discretion is failing to enter a sentencing statement at all. Id. Other examples include finding

11

aggravating or mitigating factors unsupported by the record, omitting mitigating factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. Brock v. State, 983 N.E.2d 636, 640 (Ind. Ct. App. 2013).

Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. Henderson v. State, 769 N.E.2d 172, 179 (Ind. 2002). A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance. Id. The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. Sherwood v. State, 749 N.E.2d 36, 38 (Ind. 2001). Furthermore, while Indiana law mandates that the trial court not ignore facts in the record that would mitigate an offense, and a failure to find mitigating factors that are clearly supported by the record may imply that the trial court failed to properly consider them, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Carter v. State, 711 N.E.2d 835, 838 (Ind. 1999).

Perosky first contends that the trial court erred in failing to find his non-violent nature as a mitigating factor. However, our review of the trial court's sentencing order reveals that the trial court considered as a mitigating factor that Perosky "ha[d] no prior acts or history of violence." Appellant's App. p 123. We find no error. Perosky also contends that the trail court failed to consider his relationships as a mitigating factor. Specifically, Perosky contends that he cares for and supports his girlfriend with her addiction problems. He also

states that he assisted her during her recent surgery. He claims that he assists his handicapped niece and nephew, and that he has a strong loving relationship with his daughters. The gravamen of his argument appears to be that his incarceration would result in undue hardship on his family and girlfriend. A trial court is not obligated to find a circumstance to be mitigating merely because the defendant advances it. Benefield v. State, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), trans. denied. In particular, a trial court is not required to find that a defendant's incarceration would result in undue hardship on his dependents. Id. Many persons convicted of crimes have others who depend on them. Absent special circumstances showing that the hardship to them is "undue," a trial court does not abuse its discretion by not finding this to be a mitigating factor. Id. Here, Perosky has failed to show special circumstances, and we find no abuse of discretion in the trial court's failure to find undue hardship to Perosky's dependents as a mitigating factor.

### Conclusion

The trial court did not abuse its discretion in admitting evidence, the prosecutor did not engage in misconduct during closing argument, and the trial court did not fail to identify significant mitigating factors.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.

13