## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2017, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Corey L. Scott
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dwayne Casteel,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 30, 2017<br><br>Court of Appeals Case No.<br>49A02-1606-CR-1476<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>The Honorable Richard Hagenmaier, Commissioner<br><br>Trial Court Cause No.<br>49G04-1510-F5-36410 |

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Dwayne Casteel was convicted of robbery as a Level 5 felony. Casteel raises two issues on appeal:

1. Did the trial court abuse its discretion in admitting hearsay?

2. Did the State present sufficient evidence to support Casteel's conviction?

[2] We affirm.

## Facts & Procedural History

[3] During the early morning hours on October 10, 2015, Glen Julbert contacted a woman who was offering massage services on backpage.com, a website commonly used to advertise escort services. Julbert and the woman, who called herself China but was later identified as Mary Day, agreed on a price of $60-65 for a thirty-minute massage, and Day provided Julbert with the address of her apartment.

[4] Julbert arrived at Day's apartment at approximately 2:00 a.m. Day, who Julbert recognized as the woman in the photos on the backpage.com advertisement, answered the door and invited him inside. Day was wearing a handgun in a holster. The two sat down and talked for approximately ten minutes before Day directed Julbert to her bathroom and told him to undress down to his boxers. Julbert did as he was instructed and came out of the

bathroom a few minutes later wearing only his boxers and carrying the rest of his clothing. Day was not there when he returned, so Julbert put his clothes down and sat in a chair. Day then emerged from a walk-in closet and sat across from Julbert.

[5] Moments later, three men rushed into the apartment. The first man to enter, who was later identified as Casteel, was armed with a handgun and pointed it at Julbert. Casteel ordered Julbert to get on the ground and demanded his wallet. Julbert told Casteel his wallet was in his pants, and Casteel retrieved it and took the $410 he found inside. Casteel gave Julbert back his empty wallet and ordered him to get dressed. While Julbert was getting dressed, Casteel took Julbert's cell phone and his pack of cigarettes from a table. Once Julbert was dressed, Casteel told him to leave and threatened to kill him if he called the police. Julbert then left the apartment.

[6] Initially, Julbert did not tell anyone what had happened because he was embarrassed and he did not want to call the police because Casteel had threatened him. Later that day, however, Julbert learned that his cell phone was being used to send vulgar messages to his daughters. Julbert then told his brother what had happened, and his brother encouraged him to call the police. Julbert did so, and two police officers met with him in a park across the street from Day's apartment. Julbert explained what happened, provided descriptions of the suspects, and showed the officers Day's apartment building and her backpage.com advertisement.

[7]   At the officers' request, Julbert knocked on the door of Day's apartment while the officers waited nearby. Day did not open the door, but she asked who was there. Julbert told her that he wanted his phone back, and Day responded that she did not have his phone and did not know what he was talking about. Julbert left the apartment door, but the officers asked him to try knocking on the door one more time. Julbert did so, and he again told Day that he wanted his phone back. Day responded that she was going to get her boyfriend.

[8]   Moments later, the door flew open and Casteel stepped out. Julbert stepped back and the police officers came around the corner with weapons drawn and took Casteel into custody. During a sweep of the apartment, police found Day hiding under a pile of clothes in a bedroom closet.

[9]   As a result of these events, Casteel was charged with robbery as a Level 5 felony. A jury trial was held on June 9, 2016, at the conclusion of which Casteel was found guilty as charged. The trial court sentenced Casteel to six years in the Department of Correction. Casteel now appeals.

## Discussion & Decision

### 1. Admission of Testimony

[10]  Casteel argues that the trial court abused its discretion in admitting hearsay testimony. The decision to admit or exclude evidence lies within the trial court's sound discretion. *Filice v. State*, 886 N.E.2d 24, 34 (Ind. Ct. App. 2008), *trans. denied*. An abuse of discretion occurs when the trial court's decision is

against the logic and effect of the facts and circumstances before it. *Dixon v. State*, 967 N.E.2d 1090, 1092 (Ind. Ct. App. 2012). Moreover, even if the trial court abuses its discretion in admitting evidence, we will not reverse if the error was harmless. *Id.* An error in the admission of evidence is harmless "when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Granger v. State*, 946 N.E.2d 1209, 1213 (Ind. Ct. App. 2011) (quoting *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009)). In other words, we will reverse "only if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." *Id*. (quoting *Wales v. State*, 768 N.E.2d 513, 521 (Ind. Ct. App. 2002), *trans. denied*).

[11] Casteel argues that the trial court abused its discretion when it allowed Detective Jerry Townsend to testify that other officers informed him that a handgun had been located inside the apartment. Specifically, Detective Townsend testified as follows:

> Q: At some point, did you receive knowledge of a gun being located?
>
> A: Yes.
>
> Q: What did you – what did you decide to do with that knowledge?

A:  I decided to leave the gun where it was.  It was – I was told that the gun was in a bag.

DEFENSE:  Objection, this is hearsay.

THE COURT:  Well, he could testify what he did or did not do, so I'm going to overrule it at this point.

*Transcript* at 95.  On cross-examination, Detective Townsend clarified that he had never personally seen the gun and that the gun was reportedly found in Day's purse.  Detective Townsend testified further that he did not collect the gun as evidence because he was very ill that day, and obtaining a warrant to seize the gun would have extended his investigation by several hours.[1]

[12]    Casteel reasserts his hearsay objection on appeal, but he has failed to cite a rule of evidence or any other legal authority relevant to his claim that Detective Townsend's testimony was inadmissible hearsay.  Accordingly, his hearsay argument is waived.  *See Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (explaining that "[a] party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record"), *trans. denied*.  We further note that instead of developing his hearsay argument, he argues that because Detective Townsend had no personal knowledge that a gun had been located, he "clearly was not a competent witness to testify about the gun in question."  *Appellant's Brief* at 12.

---

[1] The next day, Detective Townsend was admitted to the hospital and diagnosed with diverticulitis.

This argument is more in the nature of a claim that Detective Townsend's testimony violated Ind. Evidence Rule 602, which provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Because Casteel did not object on this basis below, any argument in this regard is also waived. *See Bush v. State*, 929 N.E.2d 897, 989 (Ind. Ct. App. 2010) (explaining that a party may not object to the admission of evidence on one basis at trial and seek reversal on another basis on appeal).

[13] Waiver notwithstanding, and assuming *arguendo* that Detective Townsend's testimony was inadmissible, we conclude that any error in its admission was harmless. As an initial matter, Julbert testified that when he met Day at her apartment, she was wearing a handgun in a holster, and Detective Townsend testified that he was told that a gun was found in Day's purse. Under these circumstances, it seems highly likely that the jury believed that the gun reportedly found in Day's purse belonged to Day rather than Casteel. We note further that Detective Townsend was cross-examined thoroughly regarding the gun, and it was made clear to the jury that he had never personally seen a gun and that he took no steps to ensure that the gun was collected as evidence. For these reasons, we conclude it was unlikely that the testimony contributed to the jury's verdict. Because any error in the admission of Detective Townsend's testimony was harmless, Casteel is not entitled to reversal on that basis.

*2. Sufficiency of the Evidence*

[14] Casteel also argues that the State presented insufficient evidence to support his conviction. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). The uncorroborated testimony of a victim alone is sufficient to support a conviction. *Jenkins v. State*, 34 N.E.3d 258, 262 (Ind. Ct. App. 2015), *trans. denied*.

[15] Although Casteel cites the applicable standard of review, he completely disregards it. His arguments are nothing more than blatant requests to reweigh the evidence and judge the credibility of witnesses, which we will not do on appeal. Julbert testified that Casteel stole his money, cell phone, and cigarettes while holding him at gunpoint. This testimony was plainly sufficient to support Casteel's conviction for robbery as a Level 5 felony. *See* Ind. Code § 35-42-5-1 (providing that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person . . . by using or

threatening the use of force on any person . . . commits robbery, a Level 5 felony").

[16] Judgment affirmed.

[17] Riley, J. and Crone, J., concur.